We will hear argument first in the council motion in Re. Aleksandr Pikus. May it please the court, good morning. I'm appearing on behalf of the petitioner, Aleksandr Pikus, and my name is Aaron Rubin. On behalf of the petitioner, I sincerely thank this court for hearing this application on an expedited basis. We certainly acknowledge that there are many defendants in the system who conduct and prepare their trials while they're in jail. They face prejudice, but that prejudice is outweighed by findings by the district court that those individuals are a risk of flight or a danger to the community. Here, the district court remanded the petitioner, who was out for three and a half years prior to the trial date, and he was remanded on the eve of trial and without a finding of any of those factors that would outweigh the prejudice of him conducting and preparing his trial while in jail. The remand was not at the request of the government. It was, although in many ways caused by the government's late production of significant materials to the defense right on the eve of trial, which had never been produced before or should have been produced earlier months or even years before, and we made a reasonable adjournment request. The government then failed to explain or acknowledge the production lapse to the district court and claimed that our motion was frivolous, which was then a reasoning that was adopted by the district court. What did that have to do with revoking Mr. Pikus' bail as you understood it? Your Honor, the district court, in my understanding, based its decision to revoke the bail on two being that our motions were, due to the frequency and duplicative nature and timing of the defendant's many pretrial motions, of which one of them was a request for an adjournment in light of those documents. The other motions were equally well-founded, if not more, in that they were requesting Brady materials that had just come up at the end of the summer and two motions in limine to preclude evidence that had not been made before. Is the turnover of documents now complete, so far as you know? Yes. Is the turnover of documents by the government now complete, so far as you know? Your Honor, I'm not certain as to that. After filing the mandamus petition, we still continue to receive documents which we have not gone through, which don't seem to be completely categorized as 3,500. Your papers say that many of them are in Russian, and they need to be translated. That usually takes quite a few weeks. How is anybody going to be ready for this trial? Well, Your Honor, that was our point. Some of them were in Russian. There were some transcripts. It was hard to know which transcripts related to what. There were other tapes that were not transcripts. And these seem to appear from years ago. So the question is, why were they dumped on the defense within a week or two of our preparation for trial? Remind me, what is the scheduled trial date? The last scheduled trial date, Your Honor, was September 16th. And in light of this Court's stay of the proceedings, we are apparently waiting to reset that trial date. So you would have to go back. Assume you win on the issue of his being in jail. You would have to go back and reschedule the trial, as I've mentioned. I mean, it's unscheduled rather than it starts tomorrow. It would have to be, my understanding of the process would have to be that there would be a new date for a... So you'd have to go back to the district court and set a new date. Yes, Your Honor. We, of course, would also request more time. No, no, I understand, but I'm just, simple procedure for me to make. Right now, there's no date for anything next. Because we're past the one that has been scheduled. Yeah, okay, all right. We'll ask the government as well that question. At least get its understanding. Anything else? And of course, unfortunately, even in these weeks that have passed, it's been virtually impossible to even take an advantage of the one or two weeks that we've had now due to the expedited preparation of the papers that we applied here for with the mandamus. And the fact that my client, unexpectedly, has been in jail and had to adapt to that. Well, are you able to communicate with him in jail, or have you been? I've gone there certainly several times, and we have certain email communications that they permit, but... When you go there, you're given a space where you can meet with him and go through trial preparation? We can do trial preparation. As you mentioned, the tapes are very lengthy to review, and it's a difficult process, especially because in this case, counsel has relied, and when I say counsel, myself, has relied so heavily on his unique expertise and familiarity with this case that he's been a very active participant in preparing his own defense and cross-examination of witnesses, who many of our cooperators, who he is very familiar with on a personal basis. Your Honor, the other grounds for the remand by the district court was related to counsel's objection to the jury selection by the magistrate judge, which was also described as bad faith. Whether it was bad faith or not, I certainly am here to say or submit that it was certainly not bad faith, but even that did not seem to be sufficiently connected to a finding of risk of flight that would warrant a remand. And the timing of our objection to the jury selection by the magistrate, while unfortunate, and certainly we didn't mean to inconvenience the court, but it was within the last two weeks of trying to prepare this case for a trial, in light of new documents arriving and a flurry of other motions, that we were concerned there were going to be issues that arose during jury selection that we would prefer to have the district court, who was familiar with this case over the last three and a half years, be present for. Thank you, Mr. Rubin. Mr. Stewart? If it may please the court, I'm Brendan Stewart. I'm appearing on behalf of the government, the appellee in this case. As the court is aware, there are two types of relief that are sought in the petition for a writ of mandamus. First, reversal of the detention order, and second, a continuance in the trial date to further prepare a defense. Can you explain to us why a detention order at that point in the proceedings before trial? Why? Why what, Your Honor? Why did the court enter a detention order at that particular moment in the proceedings? Because the defendant had acted in bad faith. The court found that the untimely filing of the objection to the referral of jury selection to the magistrate judge... What's the basis in our jurisprudence for that being a reason to revoke bail? A number of things, Your Honor. This case... What's the best case on that? I would say that jury selection had been set several times. There had been no objection lodged in any of the other settings of jury selection, including the referral of jury selection to the magistrate judge, and that the untimely filing was designed essentially to delay the trial. You don't have a case that stands for the proposition if you make an objection at the last minute, the 11th hour, for jury selection, then as to who's going to preside over jury selection will revoke your bail if we think it's in bad faith?  I believe the court acted appropriately. I believe the court was well-positioned to understand... You've never had this happen before? I've not seen it before, Your Honor, no. Neither have I, and I used to do what you do. And I'm wrestling with whether the factors that apply to... that counsel raises regarding the disclosure of... the turnover of documents, whether that should factor into our decision here. And I read the government's response, of course. We certainly feel that our production of documents has been timely and appropriate and consistent with district practice. We also believe that... When did you last... When did you make the last delivery of documents that you had to deliver, and how many were there? So we've made a discovery case, essentially in this case, that's been ongoing since its initiation. Approximately two weeks before trial, we produced the materials that the defendant is objecting to, saying that they've been produced late. As we get closer to trial... Well, two weeks before trial, how many documents were there? I'm not sure exactly the number of documents. They included... Would you measure it in dozens or hundreds as pages? Yeah, I believe it included... I would say in dozens. There certainly were recordings, which were noted earlier. Dozens in Russian? Correct. And we believe it's a manageable amount. The defendant, our understanding is, speaks Russian. And these were materials that we believe, as I said, were provided on a timely basis, that the defendant has had, and because there is no date set for trial, will continue to have ample time to review these materials and prepare. We also believe that matters such as this, discovery issues, are not an appropriate basis for seeking mandamus relief, that the court understands very well, the district court understands very well, that this discovery in this case has made certain findings, certain rulings, and if the defendant wants to challenge those rulings, he can certainly do so on direct appeal. As to the detention order itself, we believe that the bad faith finding by the judge, that the objection coming so late, was an attempt to delay trial, to essentially obstruct the ability of the court, jury department, the magistrate judge, the district judge, to do their business. The district court judge believed that, as he stated in the record, he believed that this defendant would essentially do anything. I'm sorry, say that again. Would essentially do anything to prevent this court, this trial, excuse me, from going forward, which left the court essentially with the conclusion that, having exhausted essentially his legal options, the only option remaining was flight. And the court acted to prevent that, and we believe that was appropriate. We also believe that the court... Let me ask you a question. Why does having him incarcerated speed up the process or assure the process of an early trial? I believe that the incarceration ensures his presence, essentially, at the trial. We know that, but I mean, you're suggesting that the reason for doing it was so there would be no more delays. I thought that's what you were saying. What I'm suggesting is, and what I believe the court read into the record, was that there is a bad faith act, that it came close in time to trial, that it had the deliberate effect and purpose of obstructing the ability to go forward with the trial. The defendant, including through the filing of repetitive motions, had signaled that he would do essentially anything to stop the trial from going forward. There were essentially very few legal options remaining, and if he did not want the trial to go forward, he had to flee. I believe that is the finding of the district court, and I think it's well supported. There's no determination that no measures can be taken that would stop him from fleeing. I mean, we don't know. I mean, if he's shackled hand and foot in his apartment with a guard outside and his passport is taken, he's not going anywhere. So we don't have a determination on that. It seems very odd to say that he's going to do anything, and therefore the next thing he's going to do is flee. That's like saying in a civil dispute over a check that if the plaintiff is going to do anything, if they lose the case, they're going to rob the bank. I believe the district court, in particular in the weeks leading up to trial, recognized a pattern, a pattern that included the filing of legal motions that were repetitive, that had already been ruled on by the district court, and that were taken in bad faith. I believe the court, as well as trial approach, was becoming better familiar with the facts, specifically the nature of the defendant, specifically the charges against him, the weight of the evidence since the court had many of the government's exhibits. I think that, for a lot of reasons, this defendant does represent an extreme risk of flight, and we think the detention order is appropriate. Let me ask you this. For trial preparation purposes, your witnesses are scattered about, or obviously a case agent is somewhere nearby. Yes, Your Honor. We have a number of witnesses who are located out of state. They have been brought to court for the first setting of the trial date on the 9th and then kept here at expense to the government for the second setting on September 16th, and some of them will have to be brought back again for the future date, the dissent. Whenever it is. Whenever it is. Whenever it is, yes, Your Honor. Thank you, Mr. Stern. Thank you. We're going to take a short recess and try to give you a preliminary decision, what I will call a preliminary decision orally. Do you support that in the recess? I support it. Thank you. Thank you. Maybe you support this, anyone? Thank you. Thank you. Please be seated. We will enter something in writing shortly after this, but for the party's purposes, we are construing the portion of the mandamus petition requesting to vacate the district court's order revoking bail as an appeal from that order. In so doing, it is hereby ordered that the district court's order revoking bail is vacated and the matter is remanded. On remand, the district court shall hold a detention hearing and set forth its factual findings, its weighing of the factors listed in 18 U.S.C. section 3142G, and the extent to which it considered alternatives to incarceration, and if so, on what basis they were rejected. It's ordered. Yes. Any further appeal from the entry of the court's order will return to this panel. Thank you. Thank you both. Thank you for your time.